United States District Court
Middle District of Florida
Jacksonville Division

**JOHNETTA ATKINS,**

    *Plaintiff,*

v.                                                                           NO. 3:14-cv-221-J-25PDB

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

___

## Report & Recommendation

Johnetta Atkins appeals the Social Security Administration's denial of her claims for disability-insurance and supplemental-security-income benefits. Doc. 1. The parties have briefed their respective positions. Docs. 18, 19. She seeks reversal and remand for an award of benefits or further proceedings. Doc. 18 at 25. Concluding the ALJ failed to apply the correct legal standards but an outright award of benefits is unwarranted, I recommend reversal and remand for further proceedings.

**I.  Issues**

Atkins presents two issues: (1) whether the ALJ erred in failing to include functional limitations her treating physician, Dr. Gregory Keller, had found, after giving significant weight to his opinions; and (2) whether the ALJ erred in evaluating her credibility. Doc. 18 at 1, 16–24.

**II.  Background**

Atkins is 51 and last worked in October 2010. Tr. 149, 188. She has a high-


school education and past experience as a day-care leader, mail clerk, data-entry clerk, and armored-car guard. Tr. 35–36, 189. She alleged she had become disabled in October 2009 due to a neck injury, depression, high blood pressure, headaches, degenerative disc disease, and a herniated disc. Tr. 20, 188. She proceeded through the administrative process, failing at each level. Tr. 1–3, 51–54, 58–68, 75–91.

### III. Administrative Hearing & ALJ's Decision

The Social Security Administration has established a five-step sequential process for determining if a person is disabled. 20 C.F.R. §§ 404.1520(a); 416.920(a). Under the process, the ALJ asks: (1) is the claimant currently engaged in substantial gainful activity; (2) does she have a severe impairment or combination of impairments; (3) does the impairment meet or equal the severity of the specified impairments in the Listing of Impairments; (4) based on a residual-functional-capacity assessment, can she perform any of her past relevant work despite the impairment; and (5) given her residual functional capacity, age, education, and work experience, are there a significant number of jobs in the national economy that she can perform. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). Only the residual-functional-capacity assessment is at issue here.[1]

The ALJ conducted an evidentiary hearing at which Atkins and a vocational

---

[1] At step two, the ALJ found that Atkins has severe impairments of degenerative disc disease of the cervical and lumbar spine, status post-anterior cervical decompression with fusion with residual chronic headaches, cervical radiculopathy, and major depressive disorder. Tr. 61. At step three, he found that her impairments, when considered either individually or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 61.

expert testified. Tr. 17, 19. The ALJ asked the vocational expert to consider a hypothetical person with Atkins's age, education, and work experience who (1) could lift and carry 20 pounds occasionally and 10 pounds frequently; (2) could sit, stand, and walk for six hours each in an eight-hour workday; (3) would need a 90-minute sit/stand option; (4) would be limited to occasional postural activities; (5) should not have concentrated exposure to vibrations; (6) would be limited to simple, routine, repetitive tasks; (7) could relate adequately to coworkers, the general public, and supervisors; and (8) would need infrequent and gradually introduced changes in the workplace. Tr. 37. The vocational expert testified that a person with those limitations could perform Atkins's past work as a mail clerk. Tr. 37.

The ALJ then asked the vocational expert to consider a hypothetical person with the same limitations described in the first hypothetical but who (1) could lift and carry only 10 pounds, and (2) could stand and walk for only two hours each in an eight-hour workday. Tr. 37. The vocational expert testified that a person with those limitations could not perform Atkins's past work but could perform three jobs available in significant numbers in the national economy. Tr. 37–38.

Atkins's counsel asked the vocational expert to consider a person with the limitations in the second hypothetical but who also would be limited to "occasional looking down or sustained flexion of the neck, occasional looking up, occasional turning of the head, right or left, and occasional holding the head in a static position." Tr. 39. The vocational expert testified that those limitations would "eliminate all of [the three jobs he had identified as to the second hypothetical]." Tr. 39.

After stating he had considered the entire record, the ALJ determined Atkins had a residual functional capacity that mirrored the first hypothetical presented to the vocational expert. Tr. 62.

The ALJ discussed Dr. Keller's October 2011 cervical-spine medical-source statement. Tr. 65. In it, Dr. Keller found that Atkins could sit and stand for more than two hours at a time and could sit, stand, and walk for at least six hours in an eight-hour workday; would need to walk around for five minutes every 90 minutes; could lift less than 10 pounds frequently, 10 pounds occasionally, and 20 pounds rarely; could occasionally look down or up, turn her head left or right, and hold her head in a static position; could occasionally perform postural activities; would be off-task for 5 percent of a workday; and could perform a moderate-stress job. Tr. 551–55. The ALJ found those opinions "have persuasive weight" and "adopted" them. Tr. 65.

The ALJ also discussed Dr. Keller's January 2012 letter, Tr. 65, which stated that he had been treating Atkins for disc protrusion of the cervical spine and that she had been "out of work since 2009 for this problem." Tr. 507. Dr. Keller continued that she had undergone surgery that month and was on no-work status until after her recovery period. Tr.507. He said he would allow her to return to sedentary work in 6 weeks and light-duty work in 12 weeks. Tr. 507. The ALJ found the limitation to sedentary work was not in place long enough to affect his evaluation of the other opinions. Tr. 65.

Finally, the ALJ discussed Dr. Keller's February 2012 medical source statement, Tr. 65. which found Atkins could sit and stand for more than two hours at

4

a time and could sit for about four hours and stand or walk for about two hours in an eight-hour workday; would not need to take periodic breaks to walk around; would need to take unscheduled breaks; could lift up to 10 pounds frequently and 20 pounds occasionally; could occasionally look down or up, turn her head left or right, and hold her head in a static position; and could frequently perform postural activities. Tr. 509–13. He stated: "Dr. Keller's opinion is generally supported by the medical evidence of record. It is given significant weight with the exception of the standing and walking limitations[,] for which there are no supportive findings." Tr. 65.

The ALJ discredited Atkins's subjective statements concerning the intensity, persistence, and limiting effects of her symptoms to the extent they were inconsistent with the residual functional capacity he determined. Tr. 63. He gave three reasons: (1) her statements were inconsistent with references in her medical records concerning her level of functioning, particularly her ability to travel; (2) she provided inconsistent reports concerning her alcohol consumption; and (3) she declined increases in her medication, which suggested satisfactory control of her pain on her current regimen. Tr. 63–64.

Based on the residual functional capacity and the vocational expert's testimony, the ALJ determined Atkins could perform her past relevant work as a mail clerk. Tr. 67. Accordingly, he found her not disabled. Tr. 67.

IV.  **Standard of Review**

A court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports his

5

findings. *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is "less than a preponderance"; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Id.*

V.   Analysis

A.   *The ALJ erred in addressing Dr. Keller's opinions.*

Atkins argues the ALJ erred in evaluating Dr. Keller's opinions because he did not incorporate some of Dr. Keller's limitations into his residual-functional-capacity finding despite having given significant weight to his opinions. Doc. 18 at 18–23. Specifically, she points to (1) Dr. Keller's opinions in his October 2011 medical source statement that she would need to walk around for five minutes every 90 minutes; could lift less than 10 pounds frequently, 10 pounds occasionally, and 20 pounds rarely; and would be off-task for 5 percent of a workday; and (2) Dr. Keller's opinions in his October 2011 and February 2012 medical source statements that she could occasionally look down or up, turn her head left or right, and hold her head in a static position. Doc. 18 at 18–23. She also argues the ALJ did not consider whether a closed period of disability from 2009 to 2012 was warranted in light of Dr. Keller's statement in his January 2012 letter that she was "out of work since 2009." Doc. 18 at 20–21. The Commissioner responds that most of the limitations Atkins identifies did not appear in Dr. Keller's February 2012 opinion; the ALJ clearly considered the neck-related limitations, and the evidence supports excluding them; any error in failing to

6

consider those limitations was harmless because the weight of the evidence supports excluding them; Dr. Keller stated only that Atkins was out of work since 2009, not that she was unable to work; and to the extent he found her unable to work since 2009, it is not a medical opinion. Doc. 19 at 8–13.

The residual functional capacity is an assessment, based on all evidence, of a claimant's remaining ability to work despite her impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An ALJ must evaluate every medical opinion, regardless of its source, and "state with particularity the weight he [gives] the different medical opinions and the reasons therefor." *Shafarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); 20 C.F.R. §§ 404.1527(c), 416.927(c). An ALJ must give considerable weight to a treating physician's opinion unless he shows good cause for doing otherwise. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists if (1) the evidence did not bolster the treating physician's opinion, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his own records. *Id.* at 1240–41. If an ALJ disregards a treating physician's opinion, he must clearly articulate his reasons. *Id.*

The ALJ gave significant weight to the opinions of Dr. Keller, Tr. 65, who had found that Atkins can only occasionally look down or up, turn her head left or right, and hold her head in a static position, Tr. 512, 554. He therefore should have incorporated those limitations or otherwise explained why he was not adopting them.

7

He did neither.[2] *See* Tr. 62. Instead, after specifically mentioning them, he stated that he adopted the limitations from the October 2011 statement and gave significant weight to the February 2012 statement, with the exception of the standing and walking limitations. Tr. 65. He did not otherwise qualify his acceptance of Dr. Keller's opinions. Tr. 65. His failure to incorporate or otherwise address the neck limitations warrants remand.

That the ALJ discussed other evidence that could undermine the neck-related limitations, *see* Tr. 64, 66, does not alter that conclusion. An ALJ's determination may be implicit, but the "implication must be obvious to the reviewing court." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983). Although the ALJ could have implicitly rejected the neck limitations Dr. Keller had found based on evidence he discussed in other portions of his decision, the implication is far from obvious in light of his express adoption of nearly all of Dr. Keller's opinions—and his express rejection of the portions he declined to adopt. If an ALJ does not clearly explain his decision, a court will not affirm simply because some rationale might have supported it. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The ALJ did not explain

---

[2]As discussed, the ALJ did limit Atkins to "occasional postural activities." Tr. 62. Although the regulations do not precisely define "postural limitations," the standard physical-residual-functional-capacity assessment form identifies the following as postural activities: (1) climbing ramps, stairs, ladders, ropes, or scaffolds, (2) balancing, (3) stooping, (4) kneeling, (5) crouching, and (6) crawling. *See, e.g.*, Tr. 501. Nothing suggests the ALJ considered Atkins's neck limitations to be postural activities, and the Commissioner does not contend otherwise. Furthermore, the vocational expert opined that a person limited to occasional postural activities could perform available jobs but that a person with that limitation and the neck limitations Dr. Keller had identified would be unable to work, Tr. 37, 39, thereby suggesting that the "postural activities" category does not encompass the neck limitations.

whether he rejected Dr. Keller's neck limitations, much less why he might have rejected them. The Court should not assume the ALJ's responsibility of weighing the evidence to determine whether the limitations should be included in Atkins's residual functional capacity. *Cf. Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The [Commissioner], and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly.").

The ALJ's failure to address Dr. Keller's opinions concerning Atkins's neck limitations was not harmless. An ALJ may use a vocational expert's testimony to determine, at step five, whether a significant number of one or more jobs that the claimant can perform exist in the national economy. *Winschel*, 631 F.3d at 1180. For the vocational expert's testimony to be substantial evidence, the ALJ must pose a hypothetical question that includes all of the claimant's impairments. *Id.* Because the ALJ erred in evaluating Dr. Keller's opinions concerning Atkins's neck limitations, the vocational expert's testimony might not provide substantial evidence for the ALJ's step-five determination. At the hearing, the vocational expert testified that a person with the limitations the ALJ had identified in the second hypothetical could perform three available jobs. Tr. 37–38. Atkins's counsel asked the vocational expert to consider a person with the limitations from the second hypothetical but who also would be limited to "occasional looking down or sustained flexion of the neck, occasional looking up, occasional turning of the head, right or left, and occasional holding the head in a static position." Tr. 39. The vocational expert testified that those limitations would "eliminate all of [the three jobs he had identified as to the second

9

hypothetical]." Tr. 39. At the very least, it is unclear whether those neck-related limitations would preclude a person with Atkins's residual functional capacity from performing any work.

Because the ALJ erred in evaluating Dr. Keller's opinions concerning Atkins's neck-related limitations, remand is appropriate for him to consider those limitations and decide whether to incorporate them. If the Court agrees, it should also direct the ALJ on remand to reevaluate Dr. Keller's opinions from his October 2011 medical source statement that Atkins needs to walk for five minutes every 90 minutes, can lift 10 pounds only occasionally and 20 pounds only rarely, and would be off-task for about five percent of a workday. Although the Commissioner provides plausible explanations for the ALJ's treatment of those aspects of Dr. Keller's opinions, *see* Doc. 19 at 9–13, the ALJ's discussion of them is inconsistent. He did not explain why he gave significant weight to both the October 2011 and February 2012 medical source statements despite that they contain inconsistent limitations. Because remand is warranted on a separate ground, the ALJ should address those issues as well.[3]

---

[3]If the Court disagrees and finds remand based on the ALJ's evaluation of Atkins's neck limitations unwarranted, those issues are insufficient on their own to warrant remand. As the Commissioner observes, the weight restrictions, need to take breaks to walk, and limitation to being off-task were only in Dr. Keller's October 2011 opinion, Tr. 553–55; his February 2012 opinion did not contain similar limitations, *see* Tr. 511–13. It appears the ALJ simply credited the later limitations over the earlier ones to the extent they conflicted. As to Dr. Keller's statement in his January 2012 letter that Atkins had been "out of work since 2009" due to her cervical-spine problems, that appears to reflect that she had reported to him that that was why she had not worked, rather than Dr. Keller's opinion that she was disabled since 2009. In any event, any opinion that she was unable to work is not a medical opinion because it concerns an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1),

B.   *The ALJ should reevaluate Atkins's credibility on remand.*

Atkins also argues the ALJ erred in evaluating her credibility. Doc. 18 at 23–25. She contends the ALJ's only reason for rejecting her subjective statements was that they were not credible to the extent they were inconsistent with the residual functional capacity he had found. Doc. 18 at 24. She further contends that Dr. Keller's opinions concerning her limitations were consistent with her subjective complaints. Doc. 18 at 24. The Commissioner responds that the ALJ provided several reasons for discrediting Atkins's subjective complaints, and substantial evidence supports them. Doc. 19 at 16–17.

In evaluating a claimant's subjective complaints of pain or other symptoms, an ALJ must determine whether there is an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptom arising from that condition or (2) evidence that the condition is so severe that it can be reasonably expected to cause the alleged symptom. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the objective medical evidence does not confirm the alleged severity of a claimant's symptom, but an impairment can be reasonably expected to cause that alleged severity, an ALJ must evaluate the intensity and persistence of her alleged symptoms and their effect on her ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In doing so, he must consider all available evidence, including objective medical evidence and statements from the claimant and others.

---

416.927(d)(1). The ALJ was not required to give controlling weight or deference to that statement. §§ 404.1527(d)(3), 416.927(d)(3).

20 C.F.R. §§ 404.1529(c)(2)–(3), 416.929(c)(2)–(3). When an ALJ discredits a claimant's testimony about the intensity, persistence, and limiting effects of a symptom, such as pain, he must provide "explicit and adequate reasons for doing so." Holt, 921 F.2d at 1223.

If the Court agrees remand is warranted based on the ALJ's failure to properly evaluate Dr. Keller's opinions concerning Atkins's neck limitations, the Court should direct the ALJ on remand to reevaluate Atkins's credibility if appropriate. If, on remand, he decides to include additional limitations from Dr. Keller's opinions, he would need to reevaluate her credibility because those opinions are potentially consistent with her subjective complaints.[4]

---

[4] If, however, the Court disagrees and finds remand unwarranted on that basis, the Court should affirm the ALJ's decision to discredit Atkins's subjective complaints. Contrary to Atkins's assertions, the ALJ provided several reasons for discrediting her subjective complaints: (1) her statements were inconsistent with references in her medical records concerning her level of functioning, particularly her ability to travel; (2) she provided inconsistent reports concerning her alcohol consumption; and (3) she declined increases in her medication, which suggests satisfactory control of her pain on her current regimen. Tr. 63–64. Substantial evidence supports two of those reasons, and together, they provide adequate support for the ALJ's decision. Tr. 302 (medical record indicating trip to New Orleans in July 2010); Tr. 454, 477–78, 663–67 (evidence showing conflicting statements concerning alcohol use). Substantial evidence does not support the third reason; the ALJ states Atkins testified she declined increases in her medication, Tr. 64, but her testimony reflects that her doctor did not want to increase her dosage, not that she refused an increase, Tr. 24. Nevertheless, given the strength of the other two reasons, that Atkins does not challenge any of the ALJ's specific reasons, and that the doctor's refusal to increase her medication also lends some support to the ALJ's decision to discredit her testimony, the Court should not reverse based on that single misstatement.

C.  *Remand for further proceedings is the appropriate remedy.*

Atkins requests remand for an immediate award of benefits or, alternatively, remand for further proceedings. Doc. 18 at 25. A remand for further proceedings is appropriate "where the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). A court may, however, reverse for an outright award of benefits if the Commissioner "has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Id.* Because the ALJ did not explain whether or why he rejected the neck limitations Dr. Keller had found, the Court would need to weigh the evidence to determine whether those limitations are warranted—a function reserved to the ALJ. The evidence does not establish disability without any doubt. Remand for an immediate award of benefits is therefore unwarranted.

**VI.  Recommendation**

Because the ALJ erred in evaluating Dr. Keller's opinions, the Court cannot evaluate whether substantial evidence supports his decision on disability. I recommend reversal and issuance of the following decretal:

(1)  The Court **reverses** the Commissioner's decision under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3).

(2)  The Court **remands** the case to the Commissioner with directions for the ALJ to reevaluate Dr. Keller's opinions concerning Atkins's functional limitations; to reevaluate her credibility if appropriate; and to take any other necessary action.

(3)  The Court **directs** the Clerk of Court to enter judgment in favor

of Atkins and close the file.[5]

**Entered** in Jacksonville, Florida on June 17, 2015.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    Counsel of Record

---

[5]A party must file and serve any written objection to anything in this report and recommendation (or a motion for an extension of time to do so) within **14 days** of service of this report and recommendation. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 6.02(a). Failure to do so alters the scope of direct and appellate review, including waiver of the right to challenge on appeal anything to which a specific objection was not made. *See* Fed. R. Civ. P. 72(b)(3); 11th Cir. R. 3-1; *Dupree v. Warden,* 715 F.3d 1295, 1300 (11th Cir. 2013).